Rel: March 24, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in <u>Southern Reporter</u>.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### SC-2023-0042
_____

**Levorn Davis and Levern Davis**

**v.**

**Darryl Hamilton, as personal representative of the Estate of Henry Brim, deceased**

**Appeal from Etowah Circuit Court**
**(CV-17-900448)**

WISE, Justice.

The defendants below, Levorn Davis and Levern Davis, appeal from the Etowah Circuit Court's judgment entered in favor of the plaintiff below, Darryl Hamilton, as personal representative of the estate of Henry Brim, deceased. We reverse and remand.

## Facts and Procedural History

On November 3, 2006, Brim sold property located on West Tomahawk Trail in Gadsden ("the property") to Levern Davis. On that same date, Levern executed a promissory note and a mortgage in favor of Brim. The promissory note and the mortgage provided that the principal amount of the note was $56,000; that the interest rate was 7% per annum; that principal and interest payments were "due and payable in 465 equal consecutive monthly installments of $350.00, on the first day of each month, beginning December 1, 2006"; and that the final installment would be due on August 1, 2045. On April 16, 2015, Levern executed a quitclaim deed in which he transferred his interest in the property to his brother, Levorn Davis.

On June 1, 2017, Brim filed a complaint against the defendants in the Etowah Circuit Court. Brim alleged that the defendants were in default under the terms of the promissory note and the mortgage; that the defendants disputed that they were in default; and that the parties also disputed the balance owed on the note. Brim further alleged that he was seeking to foreclose on the property under terms of the mortgage but that, "until it is determined the defendants have defaulted under the

payment of the note and mortgage securing the same, foreclosure is not available." Thus, Brim asked the trial court to enter a judgment declaring that the defendants were in default; determining the amount still owed on the promissory note; and authorizing Brim to foreclose the mortgage.

On October 24, 2018, the trial court conducted a bench trial. At the conclusion of the trial, the trial court gave the parties time to file briefs and to submit additional financial documents. However, the parties did not do so.

On May 8, 2019, Jack Floyd ("former counsel") filed a suggestion of death, stating that Brim had died on May 1, 2019. On June 18, 2021, John Floyd ("current counsel") filed a notice of appearance as counsel for "the plaintiff." On December 3, 2021, current counsel filed a motion to substitute Hamilton, as personal representative of Brim's estate, as the plaintiff. The motion stated that Hamilton had been appointed as the personal representative of Brim's estate on February 26, 2020. The trial court entered an order substituting Hamilton as the plaintiff on that same day.

On December 6, 2021, the defendants filed a "Motion to Reconsider," in which they asked the trial court to reconsider its order substituting Hamilton as the plaintiff and to dismiss the action pursuant to Rule 25(a)(1), Ala. R. Civ. P. After being directed to do so by the trial court, Hamilton filed a response to the motion to reconsider on December 16, 2021. In his response, Hamilton asserted:

"1. That the attorney for [Brim], Jack Floyd[,] filed a Suggestion of Death on May 8, 2019. That following the death of [Brim], the family member and caretaker of [Brim], Darryl Hamilton[,] came to the attorney for [Brim] to probate the Last Will and Testament of Henry Brim ….

"2. That [Brim] had numerous children/heirs-at-law that resulted in extensive time spent attempting to locate and provide service on the said heirs-at-law. Due to said delays, the Letters of Testamentary were not issued until February 26, 2020.

"3. That prior to the letters being issued, Jack Floyd … filed a Motion to Continue on January 29, 2020[,] stating that the Estate of Henry Brim was presented to Probate and that a hearing to appoint a personal representative for the estate was scheduled for February 26, 2020, which provides evidence of intent by the attorney to file the Motion for Substitution once the Letters of Testamentary were issued. …

"4. That the Letters of Testamentary were received from the Probate Court by the attorney in March of 2020[,] after being processed. Simultaneously, due to the outbreak of Covid-19, an Administrative Order was entered by the Presiding Circuit Judge for the 16th Judicial Circuit of the State of Alabama on March 13, 2020, and an amended Order

4

on March 16, 2020. An Order of April 3, 2020[,] was issued as a result of said Administrative Order suspending the Civil Non-Jury Docket of April 13, 2020[,] that the case was set on ….

"5. That court conflicts by the attorney for [Brim] resulted in continuances and due to a major health crisis of a brain bleed experienced by Jack Floyd in May of 2021, an entry of appearance was filed by John Floyd on June 21, 2021.

"6. That John Floyd assisted in taking care of his father and law partner, Jack Floyd[,] after he had to undergo two surgeries to repair a brain bleed and remove a blood clot in June of 2021.

"7. That Jack Floyd, [John Floyd's] father and law partner[,] contracted Covid-19 in August of 2021 and passed away on August 24, 2021.

"8. That due to the disruption resulting from the outbreak of Covid-19 and [Jack Floyd's] subsequently experiencing a major brain bleed that resulted in deteriorating health before his death from Covid-19, the failure to file the Motion for Substitution was made in error.

"WHEREFORE, premises considered [Hamilton] prays that your Honor will find that the failure to file a Motion for Substitution was made in error and that premises stated show that said error was made in excusable neglect."

On that same day, the trial court entered an order denying the motion to reconsider.

On June 28, 2022, the trial court entered a final judgment in the case. The trial court held that the defendants had failed to timely make

5

all payments pursuant to the promissory note and the mortgage; that the defendants were in default; that the amount owed on the note was $26,125.50; and that Hamilton could proceed with foreclosure proceedings. This appeal followed.

Discussion

The defendants argue that the trial court erroneously denied their motion to reconsider the order substituting Hamilton as the plaintiff and to dismiss the action pursuant to Rule 25(a)(1), Ala. R. Civ. P., because the motion for substitution was not filed until nearly 31 months after the filing of the suggestion of death.

Rule 25(a)(1) provides:

"If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5[, Ala. R. Civ. P.,] and upon persons not parties in the manner provided in Rule 4[, Ala. R. Civ. P.,] for the service of a summons, and may be served in any county. Unless the motion for substitution is made not later than six months after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall in the absence of a showing of excusable neglect be dismissed as to the deceased party."

(Emphasis added.) Rule 6(b), Ala. R. Civ. P., provides, in pertinent part:

"When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion … (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d), and (e), and 60(b), [Ala. R. Civ. P.,] except to the extent and under the conditions stated in them."

In Hayes v. Brookwood Hospital, 572 So. 2d 1251, 1254 (Ala. 1990), this Court held that "the six-month provision of Rule 25(a)(1)[, Ala. R. Civ. P.,] is subject to the general language of Rule 6(b)[, Ala. R. Civ. P.,] allowing the extension of a specified time period upon a determination of excusable neglect."  This Court went on to state:

"This holding requires the trial court to exercise discretion in determining, pursuant to Rule 6(b), whether there was excusable neglect warranting an extension of the time period in Rule 25(a)(1).  The determination of excusable neglect will rest on the facts of each case.  For example, in Wagner v. Frazier, 712 S.W.2d 109 (Tenn. App. 1986), the plaintiff died while awaiting a decision from the trial court on a question of damages.  One of the defendants filed a suggestion of death, but no other action was taken within the 90-day substitution period.  The defendants moved for dismissal under Tennessee Rule of Civil Procedure 25.01, a rule similar to Alabama's except for the time period.  The deceased plaintiff's administratrix filed a motion seeking substitution 8 days after the 90-day period had expired; she asserted that letters testamentary had been issued, and she sought an extension of time beyond the 90-day period set in Rule 25.01.  The defendants argued that the rule was

7

mandatory and that there was no showing or reason for the extension.

"The trial court in Wagner, however, allowed the late substitution, finding '(1) [that] the time lapse was not an unreasonable one, and (2) [that] the case had been heard in its entirety, and (3) [holding] [that] as a matter within the court's discretion only "dire" circumstances would compel dismissal.' 712 S.W.2d at 113. The appellate court stated:

> "'As is generally true, the kind of excuse that will satisfy this [excusable neglect] requirement is a function of the length of time that has passed and the possible harm to the opposite party. In this case where the suit had been fully tried and the parties were awaiting a decision from the court and the motion was made eight days after the ninety day period had run, we think the mere oversight of the plaintiff is excusable.'

"Id. See also Garcia v. Title Ins. Co. of Minn., 712 P.2d 1114 (Colo. App. 1985) (waiting for estate to be opened is not to be considered excusable neglect where the issue of excusable neglect was raised only by a passing reference in the plaintiff's brief opposing the defendant's motion to dismiss); Doherty v. Straughn, 407 A.2d 207 (Del. 1979) (ignorance of the rule does not constitute excusable neglect); Markan v. Sawchyn, 36 Ohio App. 3d 136, 521 N.E.2d 824 (1987) (excusable neglect existed where administrator of estate, appointed 99 days after suggestion of death, filed a motion for substitution 2 days after appointment); Miller v. Ladd, 140 Vt. 293, 437 A.2d 1105 (1981) (excusable neglect requires some reasonable basis for noncompliance within the stated period)."

Hayes, 572 So. 2d at 1254.

"Rule 6(b) gives the court a very broad discretion to enlarge time periods, but such enlargement is to be only for

> cause shown. ... If … the application for extra time comes after the period has run, notice of the motion must be given to the other parties, and the only cause for which extra time can be allowed is 'excusable neglect.' As to the meaning of 'excusable neglect,' see 4 Wright & Miller, <u>Federal Practice and Procedure</u>, Civil, § 1165 (1969)."

Committee Comments on 1973 Adoption of Rule 6, Ala. R. Civ. P. According to the most recent edition of <u>Federal Practice and Procedure</u>, "[e]xcusable neglect seems to require a demonstration of good faith on the part of the party seeking an extension of time and some reasonable basis for noncompliance within the time specified in the rules." 4B Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1165, at 644 (4th ed. 2015).

In this case, former counsel filed the suggestion of death on May 8, 2019. The motion for substitution includes an assertion that Hamilton was appointed as the personal representative of Brim's estate on February 26, 2020. However, the motion for substitution was not filed until December 3, 2021. Hamilton did not file a motion for enlargement of time pursuant to Rule 6(b), Ala. R. Civ. P., or assert that the delay in filing the motion for substitution was the result of excusable neglect. Rather, he first addressed the issue of excusable neglect in his response to the motion to reconsider.

In that response, Hamilton asserted that, after Brim's death, he had contacted former counsel about probating Brim's will; that Brim "had numerous children/heirs-at-law that resulted in extensive time spent attempting to locate and provide service on the said heirs-at-law"; that, as a result of the delays, letters testamentary were not issued until February 26, 2020; and that "the Letters of Testamentary were received from the Probate Court by the attorney in March of 2020 after being processed."  Hamilton also attached to the response a copy of a motion to continue that former counsel had filed in the trial court on January 29, 2020, in which it was asserted that the probate court had set a date of February 26, 2020, to appoint a personal representative of the estate. Additionally, Hamilton asserted that former counsel had experienced a brain bleed in May 2021; that, in June 2021, former counsel underwent two surgeries to repair the brain bleed and to remove a blood clot; that, in August 2021, former counsel contracted COVID-19; and that former counsel died on August 24, 2021.  Hamilton also asserted that current counsel was former counsel's son and law partner; that current counsel filed a notice of appearance on June 21, 2021; and that current counsel had assisted in taking care of his father after his June 2021 surgeries.

Assuming, without deciding, that Hamilton set forth facts from which the trial court could have concluded that any delay between the filing of the suggestion of death and the appointment of the personal representative of Brim's estate and any delay that occurred after former counsel experienced the brain bleed were the result of excusable neglect, Hamilton has not set forth sufficient facts to support the conclusion that the approximately 15-month delay between the time Hamilton was appointed personal representative of Brim's estate and when former counsel experienced the brain bleed was the result of excusable neglect.

The only reasons Hamilton provided for the delay during that 15-month period were "the disruption resulting from the outbreak of Covid-19"; the trial court's April 3, 2020, order suspending the civil nonjury docket that was scheduled for April 13, 2020; and the fact that "court conflicts by the attorney for the Plaintiff resulted in continuances." Although the trial court suspended the April 13, 2020, civil nonjury docket, the case-action-summary sheet includes notations that the trial court entered orders setting the matter for a bench trial and continuing the matter on several different occasions between April 2020 and May 2021 and that the notices of those settings and continuances were sent to

11

former counsel. Additionally, Hamilton has not explained why any of former counsel's "court conflicts" that resulted in continuances would justify or excuse his failure to file the motion for substitution during the 15-month period. Finally, Hamilton's response did not include any factual assertions or explanation as to why the disruptions caused by COVID-19 would justify the lengthy delay at issue here. Without more, the general allegations included in Hamilton's response did not explain why the failure to file a motion for substitution during the 15-month period was actually the result of excusable neglect. Compare Cobb v. Fisher, 20 So. 3d 1253 (Ala. 2009)(holding that the circumstances did not warrant a finding of excusable neglect). Accordingly, the trial court exceeded its discretion when it denied the defendants' motion to reconsider and to dismiss the action.

## Conclusion

Based on the foregoing, the trial court exceeded its discretion when it denied the defendants' motion to reconsider and to dismiss the action pursuant to Rule 25(a)(1), Ala. R. Civ. P. Accordingly, we reverse the trial court's judgment and remand this case for the trial court to set aside its December 3, 2021, order substituting Hamilton as the plaintiff, to set

12

aside the judgment it entered on June 28, 2022, and to enter a judgment dismissing the action pursuant to Rule 25(a)(1), Ala. R. Civ. P.[1]

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Bryan, Mitchell, and Cook, JJ., concur.

Sellers, J., dissents, with opinion, which Mendheim and Stewart, JJ., join.

---

[1]Based on our disposition of the issue addressed in this opinion, we pretermit discussion of the remaining issue raised by the defendants.

SELLERS, Justice (dissenting).

I respectfully dissent from the decision to reverse the trial court's judgment in favor of Darryl Hamilton, as personal representative of the estate of Henry Brim, deceased. In my view, the trial court did not exceed its substantial discretion in allowing the substitution of Hamilton as the plaintiff in this matter after Brim, the original plaintiff, died.

In June 2017, Brim commenced an action seeking a judgment declaring that a loan secured by a mortgage on land Brim had sold to Levern Davis in November 2006 was in default, declaring the outstanding amount due on the loan, and declaring that Brim could foreclose on the mortgage. A nonjury trial was held in October 2018, but, in May 2019, before a final judgment was entered, Brim died. His counsel, whom the main opinion refers to as "former counsel," filed a suggestion of death approximately one week later. In December 2021, Darryl Hamilton, as the personal representative of Brim's estate, filed a motion requesting that he be substituted as the plaintiff in this action.

After Brim died, Hamilton retained former counsel to assist in having Hamilton designated as personal representative of Brim's estate and in probating Brim's will. Although Brim died in May 2019, because

of delays associated with locating Brim's heirs, Hamilton was not appointed personal representative of Brim's estate until February 2020. Former counsel received notice of the appointment of Hamilton as personal representative in March 2020.

By that point, the COVID-19 pandemic had started to cause delays in court systems across the country. And, because of scheduling conflicts and health problems, former counsel received multiple continuances in this action. Eventually, former counsel experienced a brain bleed in May 2021, which required two surgeries in June 2021. That same month, former counsel's son and law partner, whom the main opinion refers to as "current counsel," entered an appearance on behalf of "the plaintiff." Former counsel died unexpectedly in August 2021. On December 3, 2021, current counsel moved to substitute Hamilton as the plaintiff in this action.[2]

Although Rule 25(a)(1), Ala. R. Civ. P., generally requires a motion for substitution after the death of a party to be filed not later than six

---

[2]It does not appear that the defendants below, either in the trial court or in this Court, have disputed the above-stated facts that Hamilton has alleged in attempting to excuse his delay in seeking to have himself substituted as the plaintiff in this action.

15

months after the death is suggested on the record, an action should not be dismissed for failure to meet that deadline if there is a showing of excusable neglect for the delay. And, as the main opinion notes, Rule 6(b), Ala. R. Civ. P., gives trial courts broad discretion in determining whether there has been excusable neglect. See Gilland v. Schuman, 582 So. 2d 1096, 1097 (Ala. 1991) (noting that trial courts have discretion in determining whether there has been excusable neglect and that resolution of that issue depends on the specific facts of each case); Committee Comments to 1973 Adoption of Rule 6, Ala. R. Civ P. ("Rule 6(b) gives the court a very broad discretion to enlarge time periods ….").

As the main opinion notes, a leading treatise discussing the analogous Federal Rule of Civil Procedure states that "[e]xcusable neglect seems to require a demonstration of good faith on the part of the party seeking an extension of time and some reasonable basis for noncompliance within the time specified in the rules." 4B Charles Alan Wright et al., Federal Practice and Procedure § 1165, at 644 (4th ed. 2015). In the present case, the parties had already tried this action when Hamilton sought to be substituted as the plaintiff. The only remaining step was the entry of a final judgment. The delay in substituting

Hamilton resulted from difficulties in locating the heirs of Brim's estate, the COVID-19 pandemic, and the health problems and unexpected death of former counsel, who was current counsel's father.

In <u>Edwards v. Allied Home Mortgage Capital Corp.</u>, 962 So. 2d 194, 213 (Ala. 2007), this Court described when a trial court exceeds its discretion as follows:

> "A court exceeds its discretion when its ruling is based on an erroneous conclusion of law or when it has acted arbitrarily without employing conscientious judgment, has exceeded the bounds of reason in view of all circumstances, or has so far ignored recognized principles of law or practice as to cause substantial injustice."

Viewed together, the facts in this particular case are sufficient to justify the conclusion that excusable neglect existed and to justify the trial court's exercising its discretion to allow the substitution of Hamilton as the plaintiff, albeit more than two and one-half years after Brim's death. I simply cannot conclude that the trial court "acted arbitrarily without employing conscientious judgment," "exceeded the bounds of reason in view of all circumstances," or "so far ignored recognized principles of law or practice as to cause substantial injustice." <u>Id.</u> Accordingly, I

17

respectfully dissent from the Court's decision to reverse the trial court's judgment.[3]

Mendheim and Stewart, JJ., concur.

---

[3]I also am not persuaded by the alternative argument for reversal, namely, that the evidence does not support the trial court's ruling regarding the unpaid balance on the loan secured by the mortgage.